**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

———————————————

## BAP NOS. PR 19-048, PR 19-049

———————————————

## Bankruptcy Case No. 16-01148

———————————————

**MANUEL M. BABILONIA SANTIAGO and
MIRTA CORTES,**
a/k/a Mirta Babilonia, a/k/a Mirta Cortes-Ramos,
Debtors.

———————————————

**BANCO POPULAR DE PUERTO RICO,**
Appellant,

**v.**

**MANUEL M. BABILONIA SANTIAGO and
MIRTA CORTES,**
Appellees.

———————————————————————————

**Bankruptcy Case No. 16-00978**

———————————————

**B & D ENTERPRISES S.E.,**
Debtor.

———————————————

**BANCO POPULAR DE PUERTO RICO,**
Appellant,

**v.**

**B & D ENTERPRISES S.E.,**
Appellee.

———————————————

_____

**Appeals from the United States Bankruptcy Court
for the District of Puerto Rico
(Hon. Brian K. Tester, U.S. Bankruptcy Judge)**
_____

**Before
Harwood, Panos, and Katz,
United States Bankruptcy Appellate Panel Judges.**
_____

**Luis C. Marini-Biaggi, Esq., Carolina Velaz-Rivero, Esq., and Ignacio J. Labarca-Morales,
Esq., on brief for Appellant, Banco Popular de Puerto Rico.
Isabel M. Fullana, Esq., and Eduardo J. Capdevila, Esq., on brief for Appellees, Manuel M.
Babilonia Santiago, Mirta Cortes, and B & D Enterprises S.E.**
_____

**December 23, 2020**
_____

**Panos, U.S. Bankruptcy Appellate Panel Judge.**

In each of these appeals—one in the case of individual debtors and the other in the case of an affiliated entity—Banco Popular de Puerto Rico ("BPPR") challenges two bankruptcy court orders: (1) the order refusing to compel the debtors to transfer certain real estate to BPPR free and clear of liens pursuant to the applicable plan of reorganization; and (2) the order denying reconsideration.[1]  For the reasons discussed below, we **VACATE** the orders and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND[2]

**I.      The Bankruptcy Filings**

B & D Enterprises S.E. ("B & D") is a special partnership created under the laws of Puerto Rico to develop and sell a parcel of land in Quebradillas, Puerto Rico.[3]  Mirta Cortes Ramos and Manuel M. Babilonia Santiago (together, "Babilonia")[4] each own a 50% interest in B & D and, together, have other business interests, including the development of four parcels of land that are material to this appeal.

---

[1]  Although the Panel previously declined to consolidate these appeals, it companioned them for briefing and oral argument and, now, joins them for disposition.

[2]  All references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.  All references to "Rule" are to the Federal Rules of Civil Procedure and references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[3]  A special partnership created under the laws of Puerto Rico shares the common attributes of a limited liability partnership.  Marcial Burgos v. Tomé, 144 D.P.R. 522 (1997) (official translation).

[4]  Although at the time of this appeal, Mirta Cortes Ramos and Manuel M. Babilonia Santiago were no longer married, we use the term "Babilonia" to refer collectively to these individual debtors for the sake of consistency with BPPR's brief and a number of critical documents in the record, including the stipulations discussed, infra.

On February 11, 2016, B & D filed a petition for relief under chapter 11 (hereinafter the "B & D case"). A week later, Babilonia also commenced a voluntary case under chapter 11 (hereinafter the "Babilonia case").[5]

In the Babilonia case, BPPR filed proof of claim no. 10 (the "Babilonia claim"), asserting a claim for money loaned in the amount of $1,853,617.01, $1,260,000.00 of which was secured by a lien on certain real property. In the B & D case, BPPR filed proof of claim no. 1 (the "B & D claim"), stating a claim of $1,851,992.10, of which $145,000.00 was secured by a lien on other real property.[6]

## II.     The Stipulations

Babilonia and B & D (collectively, the "Debtors") each entered into a stipulation (the "Babilonia Stipulation" and the "B & D Stipulation," respectively) with BPPR to "resolve the outstanding issues" concerning the Debtors' treatment of BPPR's claims in their respective plans

---

[5] In the proceedings below, BPPR asserted that "the main prosecution" of the respective "reorganizations" occurred in the Babilonia case. Consistent with this assertion, on appeal, BPPR characterizes the Babilonia case as the "lead case." BPPR further explains that, although the cases were not substantively or administratively consolidated, the plan in the Babilonia case "provided for a *de facto* consolidation" of the two cases and "consolidated treatment" of BPPR's claims. In addition, BPPR claims that the bankruptcy court's own focus was on the Babilonia case.

[6] Much of the supporting documentation appended to the respective proofs of claim is in the Spanish language, making it difficult to identify the location, address, or nature of the real estate from the proofs of claim. BPPR identified the real estate apparently securing the Babilonia claim in the December 2018 motion it filed in the Babilonia case, discussed infra at p. 10, as four parcels: Property No. 7,088 of Quebradillas, Property Registry, Second Section of Arecibo; Property No. 9,678 of Quebradillas, Property Registry, Second Section of Arecibo; Property No. 8,158 of Isabela, Property Registry of Puerto Rico, Aguadilla Section; and Property No. 26,026 of Isabela. In the December 2018 motion it later filed in the B & D case, discussed infra at p. 10, BPPR identified the real estate apparently securing the B & D claim as a fifth parcel: Property No. 2,571 of Quebradillas, Property Registry, Second Section of Arecibo. For consistency, we refer to the five properties collectively as the "Collateral," the term used by the parties and in several documents included in the record.

4

of reorganization. The bankruptcy court entered orders approving the B & D Stipulation and the Babilonia Stipulation (together, the "Stipulation")[7] on August 24, 2016 and September 27, 2016.

Each Stipulation provided that it was to "be incorporated into the Debtors' Plan," as it constituted "the agreement between the Parties for the payment of the BPPR Claims." Pursuant to each Stipulation, the Debtors "ratifie[d] the Loans and BPPR['s] Claims" and agreed that "any and all guarantees contained in the Loan Documents" were to remain in full force and effect "until satisfaction in full of Debtors' Plan."

The Babilonia Stipulation provided that BPPR was to "have a fixed allowed secured claim of $1,260,000.00" in that case and required Babilonia to make monthly payments of $2,000.00 during the approximate one-year period from September 1, 2016 to August 23, 2017. In the B & D Stipulation, the parties agreed that BPPR would "have a fixed allowed secured claim" of $232,500.00 and an unsecured, deficiency claim of approximately $1,619,000.00. B & D agreed to make $500.00 monthly payments for the one-year period ending August 18, 2017.

During the respective one-year periods, the Stipulation imposed upon the Debtors an obligation to "endeavor to sell any and all of the real estate . . . that form[ed] part of BPPR's [C]ollateral" to "generate sufficient proceeds" to satisfy its secured claim in the respective cases. Should no sale occur during the applicable one-year period, the Stipulation provided: "[The Debtors] shall deliver and tender any and all of the remaining Collateral to BPPR free and clear

---

[7] The Babilonia Stipulation is dated August 29, 2016. The B & D Stipulation is dated August 19, 2016. Most material terms of the two stipulations are substantially the same. In this opinion, as noted above, we use the defined term "Stipulation" unless reference to one of the individual stipulations is more appropriate for context or because a relevant term is different.

of all liens, claims or encumbrances, in full satisfaction and payment of the outstanding balance"

of its secured claim. The Stipulation also contained provisions relating to enforcement of the

respective Debtors' obligations to transfer the Collateral to BPPR if the Collateral was not sold

within the applicable one-year period (the "Writ Clause"):

> [A]s a means to ensure and facilitate the transfer of title of such properties under the auspices of the Bankruptcy Court, [the Debtors] consent[ ] to, warrant[ ] and agree[ ] that they shall not seek the entry of [a] final decree until after August 31, 2017 in order to afford BPPR with sufficient time to obtain the entry of the corresponding Order and Writ for transfer therein.

In the event of a default by the Debtors, the Stipulation provided for the reversion of the

Collateral to its "pre-petition state" and the revival of remedies (the "Reversion Clause"):

> [A]ll of the Loans, Collateral, BPPR Claims and Debtors' obligations with BPPR *shall revert to their original, pre-petition state*, and their indebtedness shall become immediately due and payable without further notice by BPPR, and BPPR shall have the right to enforce any and all remedies under this Stipulation, Loan Documents, at law or in equity.

(emphasis added). The occurrence of any of the following events constituted a default under the

terms of the Stipulation: the Debtors' violation of any terms of the Stipulation; the Debtors'

failure to make monthly installment payments; the entry of an order modifying, reversing,

revoking, staying, rescinding, vacating or otherwise amending the Stipulation; the filing and/or

confirmation of any plan inconsistent with the terms of the Stipulation; and the entry of an order

dismissing or converting Debtors' bankruptcy cases.

Additionally, with respect to BPPR's liens, the Stipulation included a ratification

provision (the "Lien Ratification Clause"):

> It is hereby understood and agreed by each of the Parties hereto that this agreement is not intended to constitute an extinctive novation . . . of the obligations and undertakings of the Parties under any of the Loans, the Guarantees, or the Loan Documents regarding such Loans to date. Debtors hereby ratify, reaffirm, confirm, consent to and acknowledge all of the terms,

priority and conditions of security interests, mortgages or liens over the Collateral provided for in the Loans, the Collateral, and the BPPR Claims, as well as Debtors' obligations under such Loan Documents, until the confirmation of the Chapter 11 Plan.[8]

## III.    The Disclosure Statements and Plans of Reorganization

### A.    The Babilonia Case

Babilonia filed an Amended Disclosure Statement and Amended Plan of Reorganization (the "Babilonia Plan") on May 26, 2017, approximately nine months after the court approved the Babilonia Stipulation.

Article IV of the Babilonia Plan classified BPPR's claim as a secured claim and further provided that "BPPR shall receive the treatment and distribution afforded at the 'Joint Stipulation[']" as may be approved by the bankruptcy court. Article 12.10 of that plan provides that any "Plan Documents are incorporated into and made part of the Plan, as if fully set forth herein." The Babilonia Plan defines "Plan Documents" to include "such agreements . . . required to effectuate the terms of" the Plan. The parties do not dispute that the Babilonia Plan incorporated the Babilonia Stipulation.

With respect to the extinguishment of liens and encumbrances, the Babilonia Plan included a provision (the "Vesting and Lien Cancellation Clause") which stated:

Cancellation of Existing Indebtedness and Liens. Except as may otherwise be provided for in the Plan, on the Confirmation Date, pursuant to Sections 363(k), 1123(a)(5), 1129(b)(2)(A)(ii), and 1141(c) of the Bankruptcy Code, all Property transferred, treated, or dealt with in the Plan or the Confirmation Order is free and clear of all liens, Claims, interests, and encumbrances. Except as may otherwise be provided for in the Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing the same, shall be cancelled, discharged

---

[8] This Lien Ratification Clause is quoted from the Babilonia Stipulation. The Lien Ratification Clause in the B & D Stipulation was not materially different.

and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor and its guarantors' obligations thereunder shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing the Claim.

## B. The B & D Case

B & D filed its plan (the "B & D Plan") and disclosure statement on May 10, 2016, prior to the date when it filed the B & D Stipulation. The B & D Plan classified BPPR as a Class 1 Secured Claimant and provided that "[i]f no sale [wa]s completed within one year[ ], [B & D] may tender in payment of the allowed claim one of the segregated lots in full satisfaction of the amount claimed." In several respects, the terms of the B & D Plan resembled those set forth in the Babilonia Plan. For example, the B & D Plan included a nearly identical Vesting and Lien Cancellation Clause. There is one notable difference, however. Because the filing of the B & D Plan pre-dated the filing of the B & D Stipulation, the B & D Plan makes no mention of the B & D Stipulation.

## C. Confirmation of the Respective Plans of Reorganization

Without any objection by BPPR, the bankruptcy court approved confirmation of the B & D Plan and approved the B & D Stipulation at a hearing held on August 24, 2016 as reflected in a Minute Entry entered on the docket on that date. The bankruptcy court entered a separate order confirming the B & D Plan on August 29, 2016. The confirmation order did not reference the B & D Stipulation.

Approximately one year later on August 23, 2017—the date provided in the Babilonia Stipulation by which Babilonia was obligated to "deliver and tender any and all of the remaining

8

Collateral to BPPR"—the bankruptcy court held a hearing to consider confirmation of the Babilonia Plan. BPPR appeared and did not object to confirmation or request an order directing the transfer of the Collateral. An order confirming the Babilonia Plan entered on August 28, 2017.

## IV. The Contested Matters

### A. BPPR's Motion to Inform

On October 24, 2018, over a year after the confirmation of the Babilonia Plan and more than two years after confirmation of the B & D Plan (together with the Babilonia Plan, the "Plan"), BPPR filed exclusively in the Babilonia case a "Motion to Inf[or]m Debtors' Default under 'Stipulation for Treatment of BPPR's Claims Under Debtors' Plans of Reorganization'" (the "Motion to Inform").[9] BPPR alleged that Babilonia had defaulted under the Babilonia Stipulation by, among other things, failing to tender the property by August 23, 2017. Although BPPR did not request any affirmative relief, the Motion to Inform nonetheless commenced the contested matter that ultimately resulted in the appealed orders.

### B. The Objection to the Motion to Inform

In an objection to the Motion to Inform, Babilonia denied having committed any breach under the Babilonia Stipulation and asserted that, pursuant to that stipulation, BPPR's claim "was secured [only] up 'until the confirmation of the Chapter 11 Plan.'" Thus, they appeared to suggest that, upon confirmation of the Babilonia Plan, they were not required to transfer the Collateral because BPPR no longer had a secured claim. In addition, Babilonia asserted that,

---

[9] The Motion to Inform defined the term "Debtors" as used in that document to include only Manuel M. Babilonia and Mirta Cortes and referred to plural "plans of reorganization" only in the title of the pleading.

despite BPPR's argument to the contrary, the existence of a default under the Babilonia Stipulation was not a matter susceptible of judicial notice but was a question whose resolution would require the court to take evidence.

The bankruptcy court scheduled a pretrial conference for February 6, 2019 in the Babilonia case to consider the Motion to Inform.

### C.      BPPR's Motion Seeking an Order Directing Transfer Free and Clear

In December 2018, prior to the pretrial conference, BPPR filed in both cases a "Motion for Entry of Order for the Transfer of Properties and the Cancellation of Pre-Transfer Date Liens . . . ." (the "Transfer Motion").  By this motion, BPPR sought, in pertinent part:

> An Order and Writ to order [the] Treasury, IRS and the corresponding Honorable Registrar of the Property in charge of the section where the Properties are recorded, to perform the actions necessary in the records under their custody to cancel all pre-transfer date liens that appear over the Properties . . . , [and] to require the Registry of the Property to allow the inscription and recordation of the transfer of the title of the Properties from their corresponding owners of record to BPPR . . . .

The Transfer Motion filed in the Babilonia case identified four properties that were the subject of BPPR's request while the motion filed in B & D's case identified a single parcel.  As the sole ground for the requested relief, BPPR stated simply:

> [I]n accordance [with] the Stipulation, as incorporated by the Plan, the Debtors [we]re required to transfer to BPPR . . . the title [to] the properties . . . free and clear of all claims, interests (including possession), liens, leases, and encumbrances pursuant to  . . . §§ 363(f), (h) and (k), and 1141(c) and P.R. Civ. Code Art. 1461 . . . .

### D.      The Debtors' Respective Objections to the Transfer Motion and BPPR's Reply

On January 2, 2019, Babilonia filed an opposition to the Transfer Motion insisting, as they had in their objection to the Motion to Inform, that BPPR no longer held a secured claim

10

and the Debtors were not obliged to tender any property. B & D followed suit, similarly objecting to the Transfer Motion. B & D faulted BPPR for its failure to "move for the tendering of its collateral" prior to August 31, 2017, as it claimed was required by the B & D Stipulation, arguing:

> The terms of the *Stipulation* unambiguously state that [BPPR's] right of payment, the loan documents, were valid and enforceable, "**until the confirmation of the Chapter 11 Plan.**" . . . In other words, upon confirmation, [BPPR] no longer held an enforceable claim against the Debtor.

BPPR replied to both objections to the Transfer Motion. In defense of its secured status, BPPR cited the "bedrock principle of bankruptcy that a secured creditor's lien . . . generally rides through bankruptcy." BPPR disputed the Debtors' claim that the Stipulation provided that BPPR's liens were preserved only "until confirmation of the Chapter 11 Plan," arguing that the language of the Lien Ratification Clause merely "limit[ed]" the duration of the Debtors' acknowledgment and confirmation of BPPR's security interests. BPPR highlighted that, in the Stipulation, the Debtors agreed to "tender and deliver any and all remaining collateral to BPPR free and clear of all liens, claims, or encumbrances" in the absence of a sale during the relevant one-year period.

### E.     The Joint Pretrial Report in the Babilonia Case

On January 31, 2019, the parties submitted a joint pretrial report in the Babilonia case. BPPR urged the court to order the Debtors to comply with their "obligation to transfer the Properties." Arguing that the Debtors' obligations were clear in the Stipulation, BPPR asserted that resolution of the parties' dispute involved "a legal determination for which no factual witness [was] necessary."

11

Babilonia countered that BPPR held no liens as of August 28, 2017—the date the Babilonia Plan was confirmed. Invoking the lien-extinguishing provision of § 1141(c) and Smith v. Mortgage Funding Corp. (In re Smith & Kourian), 216 B.R. 686 (B.A.P. 1st Cir. 1997), Babilonia argued that those liens were terminated because they were not expressly preserved in the Babilonia Plan. Babilonia emphasized that BPPR failed to object to confirmation and contended that they had not defaulted under the Babilonia Stipulation.

### F. The February 6, 2019 Pretrial Conference in the Babilonia Case

On February 6, 2019, the bankruptcy court conducted a pretrial conference in the Babilonia case regarding the Motion to Inform. Although the Transfer Motion was not scheduled for pretrial, the court considered that motion as well.[10]

BPPR began by clarifying that it had not requested any relief in the Motion to Inform but merely wished for the court "to note the fact that a default had occurred." With respect to the Transfer Motion, BPPR acknowledged that no pretrial conference had been scheduled and insisted that evidence was not required for an adjudication of that motion. BPPR instead "request[ed] that the Court rule on the pleadings." When Babilonia suggested there might be a question regarding the intent of the parties that would require evidence and fact finding, BPPR's counsel again insisted: "I'm not arguing what the parties intended. This is a legal interpretation."

Challenging Babilonia's contention that there was no default under the Babilonia Stipulation by their failure to tender the "Collateral" (which had been defined in the Stipulation

---

[10] BPPR seemed to agree to a discussion of the Transfer Motion in this procedural context, stating: "[I]f the court rules on the motion to transfer and adopts the position we articulate, I think that's going to moot or at least pave the way for a resolution of the matters in pre-trial." Two things are clear from the record: (1) BPPR did not express any objection to discussion and consideration of the Transfer Motion during the pretrial conference regarding the Motion to Inform; and (2) BPPR did not press this issue on appeal.

to be "the real estate properties that form part of BPPR's collateral"), BPPR observed that "it would be impractical or illogical to expect that between August 23 and August 31, [2017], a motion for entry of order of writ would have been filed and granted by the Court." The August 31, 2017 date referenced in the Stipulation was, according to BPPR, only a limitation on the Debtors' ability to seek a final decree, not a limitation on BPPR's ability to enforce Babilonia's obligation to transfer the properties. BPPR also challenged Babilonia's interpretation of the Lien Ratification Clause, especially Babilonia's suggested reading of that clause's phrase "until confirmation of the Chapter 11 plan." That phrase could not possibly mean that BPPR's liens "would vanish" upon confirmation, BPPR argued. BPPR asserted that "the phrase 'until confirmation of the Chapter 11 plan' [only] modifie[d] . . . the [D]ebtors' ratification of the obligations under the loans documents."

Babilonia countered that any property transfer to BPPR was conditioned upon BPPR's requesting a writ in the bankruptcy court by August 31, 2017, and further insisted "lien preservation was not contemplated in the [P]lan." Babilonia also reiterated that the question of whether they had defaulted under the Babilonia Stipulation was not susceptible of judicial notice.

At the conclusion of the hearing, the court took the matter under advisement, implicitly agreeing to adjudicate it in the manner requested by BPPR—i.e., without taking evidence.

### G.     The April 17, 2019 Order Entered in the Babilonia Case

In its Opinion and Order entered in the Babilonia case on April 17, 2019 (the "April 2019 Babilonia Order"), the bankruptcy court stated it was adjudicating the Motion to Inform. See In re Babilonia Santiago, No. 16-01148 BKT, 2019 WL 1752773, at *1 (Bankr. D.P.R. Apr. 17, 2019). Yet, the court effectively denied the Transfer Motion, concluding that: (1) Babilonia was not in default under the Babilonia Stipulation; (2) BPPR's liens were not preserved in the

13

Babilonia Plan; and, therefore, (3) Babilonia was "not obligated to transfer the properties." Id. at

*3. Elaborating regarding the legal framework for its analysis, the court stated:

> Article 1044 of the Civil Code of Puerto Rico . . . affirms that "[o]bligations
> arising from contracts have legal force between the contracting parties, and must
> be fulfilled in accordance with their stipulations." 31 P.R. Law Ann. 2994[;] In re
> Chase Monarch Int'l Inc., 581 B.R. 715, 719 (Bankr. D.P.R. 2018). Once the
> fundamental conditions required for their validity exist, contracts shall be binding
> between the parties. 31 P.R. Laws Ann. 3451. Here, the parties do not dispute
> the validity of the Stipulation. The court finds that the Stipulation was valid and
> clear on its terms, therefore binding to the parties. Consequently, because the
> Stipulation is clear and unambiguous the court will not consider any extrinsic
> evidence.

Id. at *2. In addition, the court focused on § 1141(a) of the Bankruptcy Code which provides:

> [The] provisions of a confirmed plan bind the debtor, any entity issuing securities
> under the plan, any entity acquiring property under the plan, and any creditor,
> equity security holder, or general partner in the debtor.

Id. (citations omitted). The court then concluded that, because no objections to confirmation

were filed by BPPR or any other creditor, the Babilonia Plan was "binding" and BPPR was

"precluded from raising any claims post-confirmation." Id.

> Shifting its attention to the Babilonia Stipulation, the court acknowledged:

> The Stipulation provided in part for the Debtors to sell all the properties which
> formed part of [BPPR's] collateral, during the course of one year until August 23,
> 2017. If the properties were not sold during that time, Debtors would deliver the
> remaining collateral to [BPPR], free from liens and claims. [BPPR] claims that
> the Debtors defaulted by not selling the properties during the one-year period that
> was agreed upon. There is no doubt that the Debtors were unable to sell the
> properties prior to August 23, 2017.

Id. at *3. Focusing on the Lien Ratification Clause, the court stated:

> [This] provision . . . puts a limit on the Stipulation, which also sets an expiration
> date on the liens. [BPPR] argues that this provision provides for the liens to
> remain intact until all the obligations provided for, under the Stipulation, were
> satisfied. Even if that argument were to be taken as correct by this court, 11
> U.S.C. § 1141(c) provides that the liens need to be *expressly* preserved in a plan.
> In the case before us, they were not. The court is at odds with [BPPR's] assertion

14

that the liens were preserved under that provision. On the contrary, the provision states that the Debtors shall ratify the liens until the confirmation of the Plan as stated in the Stipulation. It is clear on its terms that [BPPR] did not preserve a lien in the Stipulation nor in the Plan. Therefore, the liens expired on the date the Plan was confirmed—August 28, 2017.

[BPPR] argues that a secured creditor's liens "ride through bankruptcy" unaffected. . . . That legal premise is not applicable to this case, as it has previously been established that [BPPR's] liens were extinguished upon confirmation of the Plan under 11 U.S.C § 1141(c), and by the clear terms of the Stipulation. Even if the liens were preserved, [BPPR] still failed to fulfill its obligation, provided for in the Stipulation, to obtain the transfer of properties.

Id. (citation omitted). Turning its attention to the Writ Clause, the court observed:

The [Babilonia] Stipulation by its terms states:

. . . as a means to ensure and facilitate the transfer of title of such properties under the auspices of the Bankruptcy Court, Babilonia consents to, warrants and agrees that they shall not seek the entry of final decree until after August 31, 2017 in order to afford BPPR with sufficient time to obtain the entry of the corresponding Order and Writ for transfer therein.

According to the plain language of the above stated provision, the Debtors were not permitted to seek the entry of the final decree until after August 31, 2017. To date, the Debtors have not sought an entry of the final decree. [BPPR] was required to obtain the entry of a[n] order and writ for the transfer of title of the properties. [BPPR] failed to do so prior to the Plan's confirmation. Therefore, the properties were vested in the Debtors pursuant to § 1141(b) which provides that confirmation of the plan vests all the property of the estate in the debtor. . . . Because the liens were not preserved in the Plan, Debtors were not obligated to transfer the properties.
. . . .
Because the court concludes that the Debtors did not incur in [sic] an event of default, the Debtors do not have to comply with [the Reversion Clause] in the Stipulation.

Id. at *3-4. The court concluded by reiterating that "the Debtors d[id] not have to tender the

properties to" BPPR. Id. at *4.

**H.      The April 17, 2019 Order Entered in the B & D Case**

Also on April 17, 2019, the bankruptcy court entered an order in the B & D case (the

"April 2019 B & D Order") (collectively with the April 2019 Babilonia Order, the "April 2019

Orders") explicitly denying the Transfer Motion filed in that case.  Adopting the legal reasoning

and conclusions of the April 2019 Babilonia Order, the court ruled:

> [BPPR's] liens were extinguished upon the confirmation of the chapter 11 Plan.
> As such, the Debtor does not have to tender the properties to [BPPR].  Since the
> Stipulation confirmed through the Plan is binding and enforceable on the
> signatory parties, they must all abide by the terms and provisions established
> therein.

**I.      The Motions for Reconsideration**

BPPR filed motions seeking reconsideration in both cases.  In the motion filed in the

Babilonia case (the "Motion for Reconsideration of the Babilonia Order"), BPPR invoked

Bankruptcy Rule 9023 and sought to "alter or amend" the bankruptcy court's ruling.  In the

motion filed in the B & D case (the "Motion for Reconsideration of the B & D Order"), BPPR

incorporated by reference the arguments it articulated in the Motion for Reconsideration of the

Babilonia Order.  Yet, BPPR cited no statutory authority and sought to "vacate" rather than

amend the bankruptcy court's order.

BPPR claimed reconsideration of the April 2019 Orders was necessary because: (1) the

court failed to consider the clear and unambiguous language of the Stipulation; (2) the court

committed a manifest error of law in its application of § 1141(c); and (3) the Stipulation did not

require BPPR to seek a writ and order before the Debtors' request for a final decree.

For the first time, BPPR also presented an alternative position, namely, that the

bankruptcy court should have scheduled an evidentiary hearing to "assess the intention

16

of the [p]arties." BPPR also argued for the first time that § 1141(c) did not apply, as all four elements required to void a lien under that statute were not satisfied.

Lastly, BPPR invoked the doctrine of judicial estoppel, arguing that the Debtors violated the doctrine's dictates by initially representing that "consummation of their Plan would be achieved through the sale of the Properties" and then "deliberately chang[ing] their position." BPPR urged the court to apply the doctrine against the Debtors to prevent a "manifest injustice."

## J. Objections to the Motions for Reconsideration

Babilonia filed an objection to BPPR's Motion for Reconsideration of the Babilonia Order; B & D also objected to the Motion for Reconsideration of the B & D Order, incorporating Babilonia's arguments by reference.[11] The Debtors challenged BPPR's reconsideration request on procedural grounds, claiming that BPPR asserted arguments on reconsideration it had not previously presented, including its argument that § 1141(c) did not apply. They also disagreed with BPPR's § 1141(c) argument on substantive grounds, rejecting BPPR's contention that its liens were not "dealt with" in the Plan as required for lien extinguishment under that statute.

If any party's position had changed, the Debtors further argued, it was BPPR's. Although BPPR had previously asserted that evidence was unnecessary and the court should decide the matter on the pleadings, on reconsideration it claimed as error the court's failure to take evidence. Consequently, the Debtors asserted, judicial estoppel should be applied against BPPR. And, in any event, the Debtors further maintained, the bankruptcy court properly focused on the plain language of the Stipulation and declined to probe regarding the parties' intentions.

---

[11] In addition, B & D refuted BPPR's argument that the bankruptcy court should vacate the April 2019 B & D Order because it never conducted a hearing in that case. BPPR did not press this issue on appeal, however.

17

Finally, the Debtors rejected BPPR's argument that its claims "rode through" the

Debtors' bankruptcies, asserting: "The fact that a claim is allowed as secured does not mean it is

immune to the effects of confirmation."

**K.      Orders Denying the Motions for Reconsideration**

The bankruptcy court entered an Opinion and Order denying the Motion for

Reconsideration of the Babilonia Order (the "Order Denying Reconsideration of the Babilonia

Order") on September 23, 2019, reasoning:

> The Opinion is based on the motions submitted by the parties and the oral
> arguments provided at the Pre-trial Conference. This was made evident at the
> Hearing and the record demonstrates that the parties consented as to the manner in
> which this controversy would be adjudicated by the court. Any evidence of the
> intent of the parties before the Stipulation was drafted, and later during
> communications with the Debtors, was not necessary because the interpretation of
> the effects of the language in the Stipulation and the Plan on BPPR's claims was
> purely legal in nature. In this case, the court indeed determined that the terms of
> the Stipulation and the Plan were clear. Upon such finding, Article 1233 of the
> Civil Code, 31 L.P.R.A. § 3471, mandates that the court's inquiry stop. The
> directive encompassed in Article 1234, 31 L.P.R.A. § 3472 to inquire beyond the
> text of the contract is not triggered unless the court finds that the terms of a
> contract are ambiguous. To probe into the intention of the parties is contrary to
> the parol[ ] evidence rule as codified in Article 1233 of the Civil Code. 31
> L.P.R.A. § 3471. Therefore, no error was committed. Just because the court
> ruled against BPPR does not mean that it can un-ring that bell.
>
> The court reiterates for clarity that during the pendency of the contested matter,
> BPPR's argument was that the Stipulation was clear on its terms; that there was
> nothing in the Stipulation or the Plan that supported the Debtors' conclusion that
> BPPR's liens were extinguished. When the Debtors proffered that the Clause
> stated that the mortgage liens are ratified until confirmation, BPPR argued that
> such Clause only binds the Debtors and not BPPR. This was the case and legal
> theory that was submitted for the court's consideration. Now, after the court's
> ruling, BPPR's arguments in their motion to reconsider fly in the face of the
> established record of this case.

In re Babilonia Santiago, No. 16-01148 BKT, 2019 WL 4621247, at *3-4 (Bankr. D.P.R. Sept.

23, 2019). In addition, the court rejected BPPR's arguments that the requisites of § 1141(c) were

not met in this case, and that "the doctrine of judicial estoppel [barred] the Debtors from circumventing the binding effects of the Stipulation and the Plan" because BPPR raised these "two arguments for the first time on reconsideration." Id. at *4. Based on the foregoing, the court concluded that the Motion for Reconsideration of the Babilonia Order was "without merit." Id.

The bankruptcy court subsequently entered an order denying the Motion for Reconsideration of the B & D Order (the "Order Denying Reconsideration of the B & D Order") (collectively with the Order Denying Reconsideration of the B & D Order, the "Orders Denying Reconsideration"), adopting the findings of fact, legal reasoning, and conclusions it expressed in the Order Denying Reconsideration of the Babilonia Order.

These appeals followed.[12]

## POSITIONS OF THE PARTIES

### I.     BPPR

As grounds for reversing the April 2019 Orders, BPPR argues that the bankruptcy court "disregarded the [parties'] Agreement as a whole," overlooking multiple Plan provisions, including: (1) the definition of "the term, 'Plan' to include documents, such as the Stipulation"; (2) the classification of BPPR as a secured claimant under Article III of the Plan; (3) Article IV of the Plan, stating that BPPR's claim would be treated as secured; (4) the inconsistency clause, providing that the Plan supersedes the Stipulation in the event of an inconsistency between the two; and (5) the Liquidation Analysis, which provides for only two scenarios—the sale of the

---

[12]  On January 30, 2020, the bankruptcy court issued a stay pending appeal in each bankruptcy case for the limited purpose of preventing the Debtors from "requesting a cancellation of liens or otherwise disposing of the real property" pending resolution of the appeals.

19

properties to pay BPPR's secured claim or transfer of the properties to BPPR. Based on the clear and unambiguous language of the parties' agreement, BPPR maintains, the court should have concluded that BPPR's liens were preserved. In the alternative, however, BPPR argues that the court should have scheduled a hearing to probe the intent of the parties.

BPPR also asks us to reverse the Orders Denying Reconsideration, arguing that the court abused its discretion by: (1) failing to consider its § 1141(c) arguments as well as its alternative argument that a hearing was required to elucidate the intention of the parties; (2) failing to conduct an evidentiary hearing; and (3) declining to invoke the doctrine of judicial estoppel to prevent the Debtors from adopting inconsistent positions.

## II.     The Debtors

The Debtors maintain that BPPR "erroneously presumes that just because a creditor has an allowed claim that its security will not be affected by the Chapter 11 Plan." They contend that all four requirements for lien extinguishment under § 1141(c) articulated in Elixir Industries, Inc. v. City Bank & Trust Co. (In re Ahern Enterprises, Inc.), 507 F.3d 817, 820 (5th Cir. 2007), are satisfied here. The Debtors add that if BPPR had an objection to the Plan's proposed treatment of its claims, it should have objected to confirmation, voted against the Plan, or moved for transfer of the property before the confirmation of the Plan. Claiming that their position throughout the litigation has remained unchanged, they assert: "At all times the Debtors have asserted that BPPR's liens were extinguished upon confirmation." The Debtors also contend that the bankruptcy court correctly applied Puerto Rico's parol evidence rule as codified in P.R. Laws Ann. tit. 31, § 3471, to exclude evidence of the parties' intent.

20

The Debtors argue that it was not an abuse of discretion for the court to refuse to address on reconsideration theories that BPPR did not previously raise, including BPPR's § 1141(c) arguments.

## JURISDICTION

We may hear appeals from "final judgments, orders, and decrees."  28 U.S.C. § 158(a) and (c); see also see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015); Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998).  "A final order is one that finally decides all the issues pertaining to a discrete dispute within the larger proceeding." Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 495 (B.A.P. 1st Cir. 2016) (citations omitted).  The Panel has previously held that an order denying reconsideration is final if the underlying order is final and, together, the two orders end the litigation on the merits.  Id. (citing Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 245 (B.A.P. 1st Cir. 2008)).  Here, the April 2019 Orders and the Orders Denying Reconsideration concluded a discrete dispute.  Moreover, viewed together, the appealed orders reflect the bankruptcy court's intent that its work was complete, and its decision represented the final decision in the dispute.  Cf. Ritzen Grp., Inc., 140 S. Ct. at 586.  Thus, the orders on appeal are final and appealable.

## STANDARDS OF REVIEW

We review a bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  In re Wheaton, 547 B.R. at 496 (citation omitted).  "Questions of statutory interpretation are reviewed *de novo*."  MB Joma, Inc. v. Olmo Nieves (In re MB Joma, Inc.), 403 B.R. 146, 148 (B.A.P. 1st Cir. 2009).  Whether a contract is clear or ambiguous is a question of

21

law, subject to de novo review. Dahar v. Raytheon Co. (In re Navigation Tech. Corp.), 880 F.2d 1491, 1495 (1st Cir. 1989) (citations omitted); see also Sergi v. Everett Sav. Bank (In re Sergi), 233 B.R. 586, 589 (B.A.P. 1st Cir. 1999) (stating contract interpretation is subject to "plenary review"). Hence, a determination of whether a provision in a confirmed plan of reorganization is ambiguous is reviewed de novo. In re Shenango Grp., Inc., 501 F.3d 338, 346 (3d Cir. 2007); see also Donnelly v. Official Comm. of Unsecured Creditors (In re Travelstead), 73 F. App'x 568, 572 (4th Cir. 2003). "[I]f a contract is deemed unambiguous, interpreting the written provisions of that contract is a question of law and thus subject to a *de novo* review standard." Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.), 212 B.R. 10, 16-17 (D. Mass. 1997) (citation omitted). Here, we review de novo whether the Plan and Stipulation were unambiguous with respect to the provisions material to the issues determined by the April 2019 Orders and consider de novo the proper interpretation of the unambiguous terms of each of those documents. Finally, we review the bankruptcy court's order denying relief under Bankruptcy Rule 9023 for an abuse of discretion. Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC), 553 B.R. 162, 171 (B.A.P. 1st Cir. 2016) (citation omitted).

## **DISCUSSION**

In reviewing the April 2019 Orders, we must consider whether the terms of the Plan and the Stipulation required the Debtors to "deliver and tender" to BPPR its Collateral after each respective debtor failed to sell that Collateral within the prescribed period. Resolution of this question involves principles governing the effect of chapter 11 plan confirmation as well as principles of Puerto Rico contract law. We begin with plan confirmation principles.

I.      The Relevant Legal Framework Governing the April 2019 Orders

   A.      Section 1141: The Effect of Confirmation

   The binding effect of a chapter 11 plan is "premised on statutory and common law claim preclusion." Lawski v. Frontier Ins. Grp., LLC (In re Frontier Ins. Grp., Inc.), 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018), aff'd, 598 B.R. 87 (S.D.N.Y. 2019). The applicable Bankruptcy Code provision is § 1141(a), which provides, in relevant part: "[T]he provisions of a confirmed plan bind the debtor . . . and any creditor, . . . whether or not the claim or interest of such creditor . . . is impaired under the plan . . . ." 11 U.S.C. § 1141(a). Thus, "[o]nce a plan is confirmed, neither a debtor nor a creditor may assert rights that are inconsistent with its provisions." In re A. Hirsch Realty, LLC, 583 B.R. 583, 603 (Bankr. D. Mass. 2018) (citations omitted). In addition to the preclusive effects of § 1141(a), the doctrine of res judicata—which "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit"—precludes challenges to a confirmed plan. United Indep. Sch. Dist. v. Vitro Asset Corp. (In re Vitro Asset Corp.), 656 F. App'x 717, 723 (5th Cir. 2016) (citation omitted).

   "Section 1141(c) provides with immaterial exceptions that 'except as provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.'" In re Penrod, 50 F.3d 459, 462-63 (7th Cir. 1995) (quoting 11 U.S.C. § 1141(c)).

   B.      Interpreting a Chapter 11 Plan

   "A [c]hapter 11 bankruptcy plan is essentially a contract . . . and must be interpreted according to the rules governing the interpretation of contracts." Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004) (citation omitted). "The rules of contract interpretation applied

23

are those of the state in which the plan was confirmed." In re Aspen St. Corp., 405 B.R. 767, 775 (Bankr. E.D. Pa. 2009). Here, the Plan was confirmed in Puerto Rico. Because case law generally treats Puerto Rico law as the functional equivalent of state law, Puerto Rico law controls questions of the Plan's interpretation. See, e.g., Kmart Corp. v. Dow Roofing Sys., LLC, No. 12-1679 (PG), 2013 WL 6229378, at *2 (D.P.R. Dec. 2, 2013) (stating, in context of contract dispute, court "must look to Puerto Rico law in the matter of contracts because general principles of state contract law control") (citation omitted).

"Pursuant to Puerto Rico law, when a court is faced with a contractual dispute it must first determine if the terms of the contract are clear." Autoridad de Carreteras y Transportacion v. TransCore Atl., Inc., 387 F. Supp. 3d 163, 166 (D.P.R. 2017) (citing P.R. Laws Ann. tit. 31, § 3471) (footnote omitted). Under Puerto Rico law, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31, § 3471. "Consequently, a court may not consider extrinsic evidence at all, if it finds that the terms of an agreement are clear." P.R. Tel. Co. v. Advanced Cellular Sys., Inc. (In re Advanced Cellular Sys., Inc.), 483 F.3d 7, 12 (1st Cir. 2007) (citations omitted). An agreement is clear when it can "be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation . . . ." Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir. 1987) (citations omitted). "When a contract contains several sections or clauses, they 'should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together.'" Autoridad de Carreteras y Transportacion, 387 F. Supp. 3d at 167 (quoting Yordan v. Burleigh Point, Ltd., 552 F. Supp. 2d 200, 204 (D.P.R. 2007)) (other citation omitted).

24

## II. The Standards Applied

### A. The Babilonia Case

As discussed above, the Babilonia Plan incorporated the Babilonia Stipulation by reference, which stipulation imposed on Babilonia an obligation to "endeavor to sell any and all of the real estate" comprising BPPR's Collateral to "generate sufficient proceeds" to satisfy BPPR's secured claim. The Babilonia Stipulation also provided unambiguously that, should Babilonia fail to sell any of the properties comprising BPPR's Collateral within the prescribed one-year period, Babilonia "shall deliver and tender any and all remaining Collateral to BPPR free and clear of all liens, claims or encumbrances."[13] Equally clear is the Babilonia Stipulation's provision that the "violation of any of [its] terms" would constitute an event of default. The Babilonia Stipulation further provided that, upon the occurrence of any event of default, the "Loans, Collateral, BPPR Claims and Debtor's obligations with BPPR shall revert to their original, pre-petition state . . . ."

It is undisputed that Babilonia failed to sell the Collateral within the prescribed one-year period and then did not "deliver and tender" the property upon the expiration of that period on August 23, 2017. Therefore, it was error for the bankruptcy court to conclude, as it did in the April 2019 Babilonia Order, that there was no event of default under the Babilonia Stipulation and the Babilonia Plan. We do not see a plausible reading of the Babilonia Stipulation where Babilonia's failure to transfer the Collateral to BPPR after expiration of the year sale period

---

[13] By characterizing this provision of the Babilonia Stipulation as unambiguous, we are not suggesting that the provision was a model of draftsmanship or making any determination that other provisions of the Stipulation or Plan are unambiguous.

would not constitute a "violation . . . of the terms of [the] Stipulation" and an event of default.[14] The bankruptcy court appears to have adopted the Debtors' interpretation of the Stipulation when it concluded that Babilonia's obligation to transfer the property was conditioned, not only on the Debtors' failure to sell the property, but also on BPPR's "[seeking] the transfer of title through an order or writ." However, the language of the operative documents does not support this interpretation. Rather, the language of the Babilonia Stipulation imposes the obligation to transfer on Babilonia without restriction:

> In the event that no sale were to take place prior to the expiration of the one (1) year period detailed above, on or before August 23, 2017, Babilonia shall deliver and tender any and all of the remaining Collateral to BPPR free and clear of all liens, claims or encumbrances, in full satisfaction and payment of the outstanding balance of the Secured Claim.

> The language of the Writ Clause does not alter our analysis:

> To this end, and as a means to ensure and facilitate the transfer of title of such properties under the auspices of the Bankruptcy Court, Babilonia consents to, warrants and agrees that they shall not seek the entry of [a] final decree until after August 31, 2017 in order to afford BPPR with sufficient time to obtain the entry of the corresponding Order and Writ for transfer therein.

The Writ Clause contemplated entry of a writ and order by the bankruptcy court as "**a** means . . . to facilitate the transfer." (emphasis supplied). The bankruptcy court appears to have concluded that this mechanism was to be the *sole* means of enforcing the Debtors' transfer obligations, but this interpretation is not supported by the plain meaning of the language in the Babilonia Stipulation. Further, the language of the Babilonia Stipulation does not support an interpretation that Babilonia's agreement not to seek to close the case before August 31, 2017 (three days after

---

[14] The bankruptcy court did not make any findings of waiver or laches and, with the consent of the parties, did not conduct an evidentiary hearing to consider whether those doctrines might excuse Babilonia from performing any obligations under the Babilonia Stipulation and the Babilonia Plan.

entry of orders approving the Babilonia Stipulation and confirming the Babilonia Plan—and prior to the "Effective Date" of that plan) limits in any way BPPR's remedies in the event of a default under the Babilonia Stipulation as incorporated by that plan, including its potential right to compel specific performance of Babilonia's obligation to transfer the Collateral.  See, e.g., Little v. Clay (In re Clay), Adv. Pro. No. 09-8039, 2010 WL 547165, at *2 (Bankr. E.D. Okla. Feb. 10, 2010) (stating "[w]here a debtor fails to . . . act in accordance with a confirmed plan, a creditor's remedy may be for breach of contract or suit to enforce the debtor's obligation") (citations omitted); see also P.R. Laws Ann. tit. 31, § 3052 ("The person prejudiced may choose between exacting the fulfillment of the obligation or its rescission . . . ."); Riofrio Anda v. Ralston Purina, Co., 959 F.2d 1149, 1152 (1st Cir. 1992) (stating "the Puerto Rico Supreme Court interprets [P.R. Laws Ann. tit. 31,] § 3052 to allow plaintiffs to elect freely between two remedies, damages or specific performance") (citing Vázquez v. Tribunal Superior, 78 P.R.R. 707, 712 (1955)).

Viewing all the terms of the Babilonia Plan and Babilonia Stipulation as a whole as directed by the law of Puerto Rico and this Circuit, we also find no language that conditioned Babilonia's obligation to transfer the property to BPPR on the preservation of BPPR's liens.  The bankruptcy court ruled that the Babilonia Plan eliminated BPPR's liens and, "[b]ecause the liens were not preserved in the Plan, Debtors were not obligated to transfer the properties."  We do not need to reach the issue of whether the BPPR liens were eliminated or revived, because we conclude that Babilonia's obligation to "deliver" the Collateral arises under the Babilonia Plan and Babilonia Stipulation and is independent of BPPR's lien rights.  To the extent that the April 2019 Orders can be read to rule that the Vesting and Lien Cancellation Clause vested the Collateral in the Debtor free and clear of any "Claim" of BPPR to enforce this obligation to

27

transfer, we reject that interpretation because the terms of the Babilonia Stipulation, as incorporated by the Babilonia Plan, impose a clear obligation on Babilonia to transfer the Collateral. Thus, that provision falls within the exception set forth in the Vesting and Lien Cancellation Clause. Further, the Babilonia Plan cannot be read to vest property free and clear of its own effectuating provisions.

Equity abhors a forfeiture. Everitt v. Pneumo Abex, L.L.C., 411 F. App'x 726, 730 (5th Cir. 2011) (acknowledging this maxim) (citation and internal quotation marks omitted); see also Jones v. N.Y. Guar. & Indem. Co., 101 U.S. 622, 628 (1879); C.K. Smith & Co. v. Motiva Enters. LLC, 269 F.3d 70, 77 (1st Cir. 2001); Fashion World, Inc. v. Finard (In re Fashion World, Inc.), 44 B.R. 754, 759 (Bankr. D. Mass. 1984). While this maxim may have limited utility in analyzing a forfeiture occasioned by the terms of a statute or certain express terms of a contract, in this case no express terms of the Babilonia Stipulation or Babilonia Plan limit BPPR's rights and remedies upon the failure of Babilonia to "tender and deliver" the Collateral. We do not rely on equity, but rather on the terms of the Babilonia Stipulation and Babilonia Plan in ruling that Babilonia was in default by the failure to "tender and deliver" the Collateral. No provision of the Babilonia Stipulation or Babilonia Plan expressly terminated those obligations or limited BPPR's remedies to seek an order compelling transfer of the Collateral by filing the Transfer Motion on or after August 31, 2017. If the Babilonia case had been closed after that date, BPPR could have moved to reopen the case to seek to enforce the terms of the Babilonia Plan in the bankruptcy court or could have sought to enforce the terms of the Babilonia Plan or damages arising from a default in the courts of Puerto Rico. See Paul v. Monts, 906 F.2d 1468, 1476 (10th Cir. 1990) (discussing creditor's remedies for breach of confirmed plan and acknowledging availability of a state law-based breach of contract claim); Murdock v. Holquin,

323 B.R. 275, 282-83 (N.D. Cal. 2005) (explaining that remedies available to creditor for debtor's default under confirmed plan include "action for breach of contract in a proper court" as well as remedies under the Bankruptcy Code); In re Clay, 2010 WL 547165, at *2.

After reviewing the Babilonia Stipulation and Babilonia Plan de novo, as we are required to do, we conclude that each is unambiguous as it relates to the obligation of Babilonia to convey the Collateral and that Babilonia was in default under the Babilonia Stipulation and, consequently, the Babilonia Plan.

Because the April 2019 Babilonia Order was premised on error—namely, the bankruptcy court's conclusion that the Debtors were not in default of their obligation under the Stipulation to transfer the property—we **VACATE** that order, as well as the Order Denying Reconsideration of the Babilonia Order, and **REMAND** for further proceedings consistent with this opinion.

### B.    The B & D Case

In its appellate brief, BPPR's focus is on the orders entered in the Babilonia case, with little mention of the parallel developments in the B & D case. This singular focus may stem from the parties' strategic decision to permit the Babilonia case to serve as the "lead case." Or, perhaps it is the result of the bankruptcy court's own focus on the Babilonia case, which prompted that court to adopt the Babilonia case's "legal reasoning and conclusions" in the decisions it rendered in the B & D case. Whatever the reason for BPPR's narrow focus, the result is that BPPR's appellate brief overlooks factual distinctions between the two cases. For instance, as noted above, in the B & D case, the filing of the B & D Plan pre-dated the filing of the B & D Stipulation by several months and provided, simply, that the Debtor in that case "may" transfer the property in satisfaction of its obligations to B & D. The bankruptcy court approved the B & D Plan at the same hearing that it approved the B & D Stipulation. While the

29

B & D Plan makes no mention of the B & D Stipulation, the B & D Stipulation expressly provides that it is intended to address treatment of BPPR's claims under the B & D Plan and is expressly "incorporated as if set forth at length therein" in the B & D Plan. Nonetheless, it is apparent from BPPR's appellate brief that the substance of its argument pertaining to the appealed orders in the B & D case closely follows its argument relating to the appealed orders in the Babilonia case. It is also apparent from BPPR's early motion to consolidate these appeals that BPPR regarded the issues on appeal in each case as the same or similar and that it sought the same relief in each appeal. Consequently, we overlook the shortcomings in BPPR's brief as to the B & D case to reach the merits of the appealed orders in that case.

We have previously observed the extent of the similarity between the Stipulations. Notably, the B & D Stipulation, like the Babilonia Stipulation, imposed upon B & D identical, unambiguous obligations to: (1) "endeavor to sell" the Collateral within a one-year period ending on August 18, 2017; and (2) "deliver and tender any and all of the remaining Collateral to BPPR" in the event "that no sale were to take place prior to the expiration of the" one-year period. In the April 2019 B & D Order, the bankruptcy court explicitly held that the B & D Stipulation, "confirmed through the Plan," was "binding and enforceable"—a holding that has gone unchallenged on appeal.[15] It is equally clear from this record that B & D neither sold the Collateral nor tendered it to BPPR, and that these failures amounted to an event of default under

_____

[15] As we previously observed, the B & D Plan pre-dated the B & D Stipulation and, therefore, lacks any reference to the B & D Stipulation. Nevertheless, the B & D Stipulation, approved at the same hearing as the B & D Plan, provides that it is to be incorporated into the B & D Plan and expressly states that it is intended to address "treatment of BPPR's claim under the Debtor's [sic] respective plans of reorganization." This provision, read together with the bankruptcy court's holding that the Stipulation was "confirmed through the Plan," supports our conclusion that the B & D Plan imposed a similar obligation to transfer the Collateral.

the terms of the B & D Stipulation. Therefore, for the same reasoning set forth above in our analysis regarding the April 2019 Babilonia Order, we conclude it was error for the bankruptcy court to determine, as it did in the April 2019 B & D Order, that there was no event of default under the B & D Stipulation and the B & D Plan. Because the April 2019 B & D Order was likewise premised on error, we **VACATE** that order, as well as the Order Denying Reconsideration of the B & D Order, and **REMAND** for further proceedings consistent with this opinion.

<u>**CONCLUSION**</u>

For the foregoing reasons, we **VACATE** the April 2019 Babilonia Order, the Order Denying Reconsideration of the Babilonia Order, the April 2019 B & D Order, and the Order Denying Reconsideration of the B & D Order and **REMAND** for further proceedings consistent with this opinion where the bankruptcy court may determine the consequences of the default in relation to the Motion to Inform and the Transfer Motion.